UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NESTOR S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, et al., <br><br> Defendants. | Case No. 3:23-cv-01845-JSC <br><br> **ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 8 |

Plaintiff seeks social security benefits for physical impairments, including: right knee arthritis, arthritis and finger injury in the hands, hypertension, high cholesterol, type two diabetes mellitus, low back pain, and leg pain. (Administrative Record ("AR") 25, 262.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment. (Dkt. Nos. 8, 10.[1]) After careful consideration of the parties' briefing, the Court concludes oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. The ALJ's findings regarding the medical opinion evidence and Plaintiff's subjective pain testimony are not supported by substantial evidence, but there are outstanding issues to be resolved requiring remand for further proceedings.

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# BACKGROUND

### A. Procedural History

Pursuant to the Social Security Act, on October 14, 2019, Plaintiff filed a Title II application for disability benefits alleging a disability onset date of July 30, 2018. (AR 194-196.) Plaintiff's application was denied initially and upon reconsideration. (AR 78-91, 99, 106.) Plaintiff submitted a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 114.) A telephonic hearing was held on March 15, 2022 where Plaintiff, assisted by an interpreter, and a vocational expert (VE) testified. (AR 36-67.) On April 5, 2022, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled within the meaning of the Social Security Act. (AR 21-30.)

Plaintiff filed a timely request for review with the Appeals Council, which the Appeals Council denied. (AR 1-3, 189.) Plaintiff thereafter filed the underlying action. In accordance with Civil Local Rule 16-5, the parties filed cross motions for summary judgment. (Dkt. Nos. 8, 10.)

### B. Issues for Review

1. Did the ALJ err in evaluating Plaintiff's subjective pain testimony?
2. Did the ALJ err in evaluating the medical evidence?
3. Did the ALJ err in determining Plaintiff's residual functional capacity?
4. Did the ALJ err at Step Five?
5. Should the Court remand for payment of benefits or further proceedings?

# LEGAL STANDARD

A claimant is considered "disabled" under the Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

## DISCUSSION

### I. SUBJECTIVE SYMPTOM TESTIMONY

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Applying the two-step analysis, the ALJ first determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 462.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *See Lingenfelter*, 504 F.3d at 1036. The ALJ did not find evidence of malingering, but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 25.)

3

The ALJ's boilerplate conclusory rationale fails to satisfy the requirement an ALJ provide "specific, clear, and convincing reasons" supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. *Trevizo*, 871 F.3d at 678 (finding the ALJ erred in using "boilerplate language" for the adverse credibility finding rather than offering "specific, clear, and convincing reasons."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding the ALJ erred in failing to "specifically identify any such inconsistencies" and instead stating "her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination."). To ensure meaningful review, the ALJ must provide "specific reasons" "so that we may ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494. The ALJ must "link that testimony to the particular parts of the record supporting her non-credibility determination." *Id*. The ALJ's failure to do so here is grounds for remand.

Elsewhere in the opinion, the ALJ referred to Plaintiff's "normal findings" on exam, his "refusal of physical therapy," his "conservative treatment," and his use of a stationary bike for exercise. (AR 26-28.) To the extent these form the basis for the ALJ's rejection of Plaintiff's subjective pain testimony, they are not clear and convincing reasons supported by substantial evidence.

First, substantial evidence does not support the ALJ's reliance on "normal findings" as a basis for discounting Plaintiff's subjective pain testimony. While the ALJ highlights portions of the record which describe "normal" findings, the ALJ ignores statements—often from the very same visit—which document abnormal findings and/or pain. For example, the ALJ relies on records from a September 2019 visit with Dr. Luu to note Plaintiff had knee range of motion 115 degrees and "the remaining findings were normal." (AR 25-26.) However, the ALJ ignores another statement on the very same page: "Patient now with bone to bone arthritis in the right knee." (AR 424.) Dr. Luu states: "Patient will likely need a TKA in the future but currently a little too young and needs to get his BMI less than 40." (AR 425.) Dr. Luu's notes from a visit a year later likewise document Plaintiff's bone to bone osteoarthritis and his history of cortisone injections with no pain relief. (AR 866.) Indeed, despite multiple references to Plaintiff's bone to

4

1    bone arthritis and need for a total knee replacement in the medical record, neither is discussed in
2    the ALJ's opinion.  (*See also* AR 1017, 1020, 1272.)  The ALJ erred in cherry picking evidence
3    supporting his mild examination findings, while ignoring the contrary evidence. *See Williams v.
4    Colvin*, No. 14-cv-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up)
5    ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled,
6    but must consider the evidence as a whole in making a reasoned disability determination.").

7    Second, the record does not support the ALJ's finding that Plaintiff refused physical
8    therapy.  While the record reflects Plaintiff declined physical therapy in September 2019, it also
9    reflects a physical therapy assessment three months later during which Plaintiff was provided
10   home exercises.  (AR 425, 563-64.)  Two months later, in February 2020, Plaintiff attended
11   another physical therapy session.  (AR 765-69.)   In discussing this latter visit, the ALJ observes
12   Plaintiff "did not pursue any physical therapy" after this visit.  (AR 26.)  The ALJ, however, fails
13   to note Plaintiff's ability to attend physical therapy—indeed anyone's ability to attend physical
14   therapy—was dictated by forces outside his control as a result of the COVID pandemic and
15   lockdown.  Because the ALJ's failed to consider the context for Plaintiff's lack of pursuit of
16   physical therapy, this rationale is not supported by substantial evidence.

17   Third, the ALJ relied on "treatment record show[ing] conservative treatment, limited to
18   medication and chiropractic treatment."  (AR 28.)  Even if such treatment could be deemed
19   "conservative," conservative medical treatment can only be used as a basis for discounting a
20   claimant's testimony where the ALJ identifies the more aggressive treatment options that were
21   available and appropriate and considers the reasons the claimant did not pursue more aggressive
22   treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n adjudicator must not draw
23   any inferences about an individual's symptoms and their functional effects from a failure to seek
24   or pursue regular medical treatment without first considering any explanations that the individual
25   may provide, or other information in the case record, that may explain infrequent or irregular
26   medical visits or failure to seek medical treatment.") (internal citations and quotation marks
27   omitted); *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar.
28   28, 2016) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that

more aggressive treatment options are appropriate or available." (internal citations and quotation marks omitted)). Thus, the ALJ errors when he draws an adverse inference from Plaintiff's treatment plan without giving him the opportunity to explain why he did not elect a more aggressive treatment plan. *See* SSR 16-3p (stating an ALJ must consider "possible reasons" for conservative treatment and an ALJ may need to contact the claimant or raise the issue at the hearing); *Eitner v. Saul*, 835 F. App'x 932, 933 (9th Cir. 2021) (citing SSR 16-3pm and stating failure to pursue more aggressive treatment was not a clearing and convincing reason to reject plaintiff's testimony because the "ALJ failed to consider possible reasons why claimant did not seek or obtain treatment" and the ALJ only asked plaintiff whether he had received treatment, but "the inquiry ended there"). Here, Plaintiff was repeatedly advised he needed to lose weight before he would be a candidate for more aggressive treatment such as surgery. (AR 54-55, 425, 869, 1272-73.) The ALJ erred by failing to consider Plaintiff's reasons for not pursing more aggressive treatment.

      Finally, the ALJ noted Plaintiff "reported difficulty walking but indicated that he rode an exercise bicycle 20 to 30 minutes and lifted weights." (AR 26; *see also* AR 27, 28 (likewise noting Plaintiff's exercise "regimen" of riding a stationary bike).) If the ALJ makes a "specific finding" the plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," that "may be sufficient to discredit a claimant's [symptom] allegations." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citation omitted). Here, however, the ALJ failed to connect Plaintiff's use of a stationary bike with any work-related tasks. Further, the ALJ ignored Plaintiff's testimony riding the bike causes pain, but it is less than when standing or walking, and the reason he does it is because he was told he needed to lose weight before he could have knee surgery. (AR 54-55.) The ALJ again erred in cherry-picking evidence supporting his conclusion while ignoring evidence contradicting his conclusion. *See Cotton v. Astrue*, 374 Fed. App'x. 769, 773 (9th Cir. 2010) (holding an ALJ's "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding").

\*\*\*

1    In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony does not satisfy

2    the "demanding" "clear and convincing standard." *Garrison*, 759 F.3d at 1013.

## II.    MEDICAL OPINION EVIDENCE

SSA has established a new regulatory framework for evaluating medical opinions for applications such as this filed on or after March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789-792 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c, 416.920c (2017). The new framework eliminates a hierarchy of or deference to medical opinions, and instead uses certain factors to determine the persuasiveness of a medical opinion. *See Woods*, 32 F.4th at 789-792. The factors are: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *P.H. v. Saul*, No. 19-cv-04800-VKD, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (cleaned up) (quoting 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5)).

The most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. *See Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Id*. at 791-92 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (cleaned up) (citing 20 C.F.R. § 404.1520c(c)(2)). The third factor—"relationship with the claimant"— encompasses "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed, ... and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. at 792 (citing 20 C.F. R. § 404.1520c(c)(3)(i)–(v)). The ALJ must explain how he considered supportability and consistency, and may, but is not required to explain how he considered factors three, four, and five. *See id*. at 792; *see also* 20 C.F.R. § 404.1520c(b)(2).

Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787. Rather,

7

1    the ALJ's decision must "simply be supported by substantial evidence." *Id*. The "ALJ cannot

2    reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

3    an explanation supported by substantial evidence." *Id*. at 792 (cleaned up). "The agency must

4    articulate how persuasive it finds all of the medical opinions and explain how it considered the

5    supportability and consistency factors in reaching these findings." *Id*. (cleaned up) (citing 20

6    C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

### A. Dr. Waterhouse

Plaintiff's treating physician Dr. Waterhouse completed a residual functional capacity evaluation on February 15, 2022. (AR 719-722.) Dr. Waterhouse opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit at least 6 hours in an 8-hour workday (more than 2 hours at a time), stand about 2 hours in an 8-hour workday (30 minutes at a time), and needed to take breaks to walk around for 10 minutes every 10 minutes. (AR 721.) The ALJ found Dr. Waterhouse's opinion unpersuasive because (1) "his conclusions on walking, standing, and sitting are inconsistent," (2) it was unclear why Dr. Waterhouse provided cervical limitations when his assessment was based on knee impairments, and (3) it was unclear why Plaintiff needed to walk for 10 minutes every 10 minutes. (AR 27.)

The ALJ, however, did not explain his rationale; that is, he did not explain which conclusions on walking, standing, and sitting were inconsistent. While some inconsistencies seem obvious—such as Dr. Waterhouse checking "no" to the box about needing to walk around during the day, but later indicating Plaintiff needed to walk around for 10 minutes every 10 minutes—the Court cannot "speculate as to the grounds for the ALJ's conclusions." *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103 (9th Cir. 2014). The ALJ also does not explain why the fact Dr. Waterhouse—Plaintiffs' treating physician for over 10 years—completed the portion of the form relating to cervical limitations, provides a basis for rejecting his opinions regarding standing, walking, and sitting.  Nor does the ALJ explain why Dr. Waterhouse's opinion regarding Plaintiff's need to walk around every 10 minutes for 10 minutes undermines his sitting and standing limitations. An ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods*, 32 F.4th at 792.

To the extent the Commissioner attempts to explain the ALJ's rationale, the Court cannot consider these post hoc rationalizations not offered by the ALJ. (Dkt. No. 10 at 13-14.) *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

### B. Dr. Luu

Plaintiff's treating physician Dr. Luu opined in February 2022 Plaintiff could stand up to 50 percent of shift, squat/kneel, knee bend up to 25 percent of shift, and lift/carry/push/pull no more than 20 pounds. (AR 1369.) The ALJ found Dr. Luu's opinion unpersuasive because "[w]hile the conclusions are relatively consistent with those in the residual functional capacity, Dr. Luu's limitations apply for only one month. Moreover, Dr. Luu failed to identify any medical findings, or even a diagnosis, that supported the limitations." (AR 28.)

The ALJ's conclusion is perplexing at best. The form the ALJ quotes from is Plaintiff's work status report which allows him to remain off work for a particular period of time: February 16, 2022 through March 18, 2022—it is thus of course limited to a particular period of time. (AR 1369.) While the record indicates Dr. Luu would not certify Plaintiff for "permanent disability due to knee OA" (AR 1021), over the three years he cared for Plaintiff, Dr. Luu's treatment notes consistently document Plaintiff's chronic knee pain and bone to bone arthritis. (*See, e.g.*, AR 424, 425, 441, 542, 769, 866, 869, 912, 1020, 1272, 1273.) The ALJ does not address or explain why Dr. Luu's findings in this regard fail to support Dr. Waterhouse's functional limitations; instead, the ALJ just ignores Dr. Luu's findings. *See Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'") (quoting 20 C.F.R. § 404.1520c(a)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding the ALJ erred when he "selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment").

Substantial evidence thus does not support the ALJ's failure to consider Dr. Luu's

statements in the treating record regarding Plaintiff's limitations and whether these statements supported Dr. Waterhouse's findings regarding Plaintiff's limitations.

### C. Dr. Sampley

The only opinion the ALJ found persuasive was state agency medical consultant Dr. Sampley who assessed Plaintiff as having a "light" RFC. The ALJ found Dr. Sampley's opinion "consistent with the evidence relied upon and the overall treatment record." (AR 27.) The ALJ elaborated noting Plaintiff "refused" physical therapy, his "exercise regimen" which included use of the stationary bike, the treatment records which show limited visits for knee pain and "few clinical abnormalities." That is, the same reasons the ALJ relied on for rejecting Plaintiff's subjective symptoms testimony. These reasons are not substantial evidence supporting the ALJ's assessment of the persuasiveness of Dr. Sampley's testimony for the same reasons they are not substantial evidence supporting the ALJ's rejection of Plaintiff's subjective symptom testimony.

### D. Dr. Sclafani

Dr. Sclafani performed a Qualified Medical Examination for Worker's Compensation and opined while Plaintiff was able to return to his usual and customary job duties, he needed to be permitted to "alternate positions from sitting to standing or standing to sitting every 30 minutes, as needed." (AR 1356.) The ALJ did not consider Dr. Sclafani's opinion. However, under the social security regulations, decisions by other entities, including workers compensation's decisions, are "not binding on us and is not our decision about whether you are disabled or blind under our rules"; as such, ALJs are not required to provide any analysis regarding a determination made by such an entity. 20 C.F.R. § 404.1504. While the ALJ should consider the underlying supporting evidence, *see* 20 C.F.R. § 404.1504, Plaintiff does not argue the ALJ failed to do so here.

\*\*\*

In sum, the ALJ's findings that the opinions of Plaintiff's treating physicians Dr. Waterhouse and Dr. Luu were unpersuasive and Dr. Sampley's opinion was persuasive are not supported by substantial evidence.

10

### III. HARMLESS ERROR

Given the lack of substantial evidence to support the ALJ's consideration of the medical evidence and subjective pain testimony, his decision cannot stand. The Court thus need not consider Plaintiff's additional arguments regarding the ALJ's RFC and step five determination. The ALJ's errors here go to the heart of the disability determination and are not harmless. "[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Had the ALJ not erred in his consideration of the medical opinion evidence and determining Plaintiff's credibility, the ALJ could have reasonably come to a different conclusion regarding Plaintiff's capacity to work. *See Stout*, 545 F.3d at 1056 (error was not harmless where crediting lay testimony supported a conclusion the plaintiff's mental impairments would preclude him from returning to gainful employment).

### IV. REMAND FOR FURTHER PROCEEDINGS OR PAYMENT OF BENEFITS

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award of benefits is proper however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal citations and quotation marks omitted).

Here, prong one is not satisfied because the record has not been fully developed. Because the ALJ erred in discounting Dr. Luu and Dr. Waterhouse's opinions and rejecting Plaintiff's subjective symptom testimony to determine his RFC, there are outstanding issues that must be resolved before a final determination can be made. Prong two has been satisfied because as

discussed above, the ALJ gave legally insufficient reasons for discounting Dr. Luu and Dr. Waterhouse's opinions, as well as Plaintiff's subjective symptom testimony. The third prong is not satisfied because it is not clear from the record the ALJ would be required to find Plaintiff disabled if medical opinions were properly evaluated and Plaintiff's symptom testimony was properly credited. For instance, to determine Plaintiff's disability status, the ALJ should reconcile the conflicting medical opinions, and other evidence in the record suggesting Plaintiff's impairments could be addressed through work-related limitations, and then determine, at step five, whether there are any jobs in the national economy Plaintiff could perform.  Because the three elements are not met, further proceedings are warranted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is granted, Defendant's motion is denied, and this action is remanded for further proceedings consistent with this Order.

The Clerk will enter judgment by separate order.

This Order disposes of Docket Nos. 8, 10.

**IT IS SO ORDERED.**

Dated: November 16, 2023

JACQUELINE SCOTT CORLEY
United States District Judge

12